WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonoran Resources LLC, et al., | No. CV-13-01266-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| Oroco Resource Corporation, et al., | |
| Defendants. | |

Defendant Goldgroup Mining, Inc. ("Goldgroup") has filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 36. The motion is fully briefed. For the reasons that follow, the Court will grant the motion in part and deny it in part.[1]

**I.   Background.**

This case arises out of contracts entered in 2010 and 2011 between Plaintiffs Sonoran Resources, LLC ("Sonoran") and SR Servicios Mineros, S.A. de C.V. ("SRSM"), and Defendants Oroco Resource Corporation ("Oroco") and Minas de Oroco Resources, S.A. ("MOR"). Doc. 36. at 2. The contracts relate to land "located in Cerro Prieto near Magdalena, Sonora, Mexico," on which the Oroco Defendants owned surface and mining rights. *Id.* The first contract was a Professional and Consulting Services

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1  Agreement (the "PCS Agreement") between Sonoran, Oroco, and MOR. *Id.* The second
2  was a Service Agreement between MOR and SRSM. *Id.* The third was an Engineering
3  Procurement and Construction Management Agreement (the "EPCM Agreement")
4  between ORC, MOR, Sonoran, and SRSM. *Id.* The EPCM Agreement incorporated the
5  Service Agreement. *Id.* Defendant Goldgroup is not a party to any of the Agreements.
6  *Id.* at 2.

7  Plaintiffs contend that, in accordance with the Service and EPCM Agreements,
8  they obtained a mining license, known as a "Manifesto de Impacto Ambiental" or
9  "MIA," from Mexico's environmental regulatory agency. Doc. 32, ¶ 25, Doc. 37 at 3.
10 Plaintiffs later pursued a suspension of the MIA at Oroco's request. Doc. 32, ¶ 37. The
11 terms of the suspension allegedly required that "all flora and fauna" on the Cerro Prieto
12 land were to "remain undisturbed, preserved, and protected." *Id.*, ¶ 37. Plaintiffs allege
13 that Oroco and MOR subsequently breached the MIA and the Agreements, and Plaintiffs
14 filed this action against Oroco and MOR on June 25, 2013. *See* Doc. 1. In September
15 2013, Goldgroup acquired MOR from Oroco along with Oroco's surface and mining
16 rights in the Cerro Prieto land. *Id.*, ¶ 62. It is unclear from the pleadings whether MOR
17 remains a separate legal entity, but Plaintiffs allege that Goldgroup "assumed all
18 liabilities of MOR, including all obligations under the Agreements." *Id.*

19 Plaintiffs allege that Goldgroup violated the terms of the MIA suspension by
20 "making unauthorized modifications to the Cerro Prieto property[.]" *Id.*, ¶ 54. Plaintiffs
21 further allege that they are owed 250,000 shares of Oroco common stock and
22 $177,066.43 under the Agreements, and that Goldgroup has "improperly induced" Oroco
23 and MOR to cease performance of the Agreements. Plaintiffs filed an amended
24 complaint in January 2014 asserting claims against Goldgroup for breach of contract,
25 breach of the duty of good faith and fair dealing, and intentional interference with
26 business expectancy. Doc. 32. Goldgroup seeks dismissal of these claims.

27 **II.    Legal Standard.**
28 When analyzing a complaint for failure to state a claim to relief under

1  Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light
2  most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th
3  Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the
4  assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are
5  insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec.*
6  *Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the
7  complaint must plead enough facts to state a claim to relief that is plausible on its face.
8  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not
9  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a
10 defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at
11 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
12 possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the
13 pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

14 **III.   Analysis.**
15     **A.   Breach of Contract.**

16     Goldgroup seeks dismissal of Plaintiffs' breach of contract claim on the ground
17 that it is not a party to any contract with Plaintiffs. Doc. 36 at 4. Under Arizona law, a
18 breach of contract claim requires a plaintiff to show (1) a contract, (2) a breach, and
19 (3) damages. *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab.*, 423 P.2d 124, 126
20 (Ariz. 1967). Goldgroup argues that it did "not become a party to the [Agreements] by
21 acquiring MOR, nor did it acquire or become liable for any obligations of MOR as a
22 result," and further argues that "the corporate form must not be disregarded." Doc. 36 at
23 4. Goldgroup does not respond, however, to Plaintiffs' allegations that Goldgroup
24 "subsumed the obligations for the Agreements" when it acquired MOR (Doc. 32, ¶ 8) and
25 "accepted all assets and assumed all liabilities of MOR, including all obligations under
26 the Agreements" (*id.*, ¶ 62).

27     It is unclear from the pleadings whether MOR still exists as a separate legal entity.
28 Goldgroup does not dispute that MOR is a party to the Agreements, nor does it argue that

1   Plaintiffs' have failed to state a breach of contract claim against MOR.  Although it is
2   true that Plaintiffs' do not allege that Goldgroup is a party to the Agreements, they do
3   allege that Goldgroup assumed MOR's obligations and liabilities under the Agreements.
4   Accepting this allegation as true, as the Court must at this stage, Plaintiffs have stated a
5   claim for breach of contract.  The Court will deny the motion to dismiss this claim.

### B. Breach of the Duty of Good Faith and Fair Dealing.

The covenant of good faith and fair dealing is implied in every contract.  *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).  "The duty arises by virtue of a contractual relationship."  *Id.*  As discussed above, Plaintiffs have alleged that MOR violated the covenant of good faith and fair dealing with respect to the Agreements and that Goldgroup assumed MOR's liabilities and obligations under the Agreements.  *See* Doc. 32, ¶¶ 8, 62.  The Court will deny Goldgroup's motion to dismiss this claim for the reasons stated above.

### C. Intentional Interference with Business Expectancy.

To state a claim for tortious interference with a business expectancy, a plaintiff must allege (1) the existence of a valid contractual relationship or business expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.  *Dube v. Lukins*, 167 P.3d 93, 98 (Ariz. Ct. App. 2007).  Arizona law requires actionable interference to be "both intentional and improper."  *Neonatology Assocs., Ltd. v. Phoenix Perinatal Assoc., Inc.*, 164 P.3d 185, 187 (Ariz. Ct. App. 2007) (quoting *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 (Ariz. 2005)).  "If the interferer is to be held liable for committing a wrong, his liability must be more than the act of interference alone."  *Id.*  "[T]here is ordinarily no liability absent a showing that the defendant's actions were improper as to motive or means."  *Id.* at 187-88.

Goldgroup argues that the Agreements were terminable at will and it therefore is not liable even if it did induce Oroco and MOR to breach the Agreements.  Goldgroup

argues that Plaintiffs had "no guarantee that Oroco and MOR would continue to perform under the contracts." Doc. 36 at 6. Goldgroup cites *Ulan v. Vend-A-Coin, Incorporated*, 558 P.2d 741, 745 (Ariz. Ct. App. 1976), where the court stated that "it is evident that a distinction exists between inducements involving contracts of a definite period of duration and at-will business relationships." Doc. 38 at 4. The *Ulan* court went on to note that "[i]f disturbance or injury to one's business relationship comes as the result of competition and without improper means, there is no cause of action, unless some superior right by contract is interfered with." *Ulan*, 558 P.2d at 745. Goldgroup also cites to *Miller v. Hehlen*, 104 P.3d 193, 203 (Ariz. Ct. App. 2005), and *Bar J Bar Cattle Company v. Pace*, 763 P.2d 545 (Ariz. Ct. App. 1988), where the Arizona Court of Appeals restated the "need for caution" when considering the issue of improper interference "in the context of competitive business activities." Doc. 36 at 6.

Plaintiffs counter that although the Agreements were terminable at will, Oroco and MOR were required to pay "all outstanding monies owed to Plaintiffs" before they were able to validly terminate the Agreements. Doc. 37 at 7. Plaintiffs claim that Goldgroup "intentionally interfered with Plaintiffs' ability to collect the 250,000 Oroco common shares and $177,066.43 owed under the Agreements," and that the Agreements are not terminable absent satisfaction of those obligations. *Id.* at 8.

Goldgroup misapplies its cited authority. This is not a case like *Ulan*, *Miller*, or *Bar J Bar Cattle Co.* where the parties were engaged in competitive business. In *Ulan*, for example, the plaintiff and defendant were both in the business of leasing coin-operated laundry equipment and the defendant offered a better deal to one of plaintiff's customers. 558 P.2d at 742-43. In *Bar J Bar*, the plaintiff and defendant were both ranchers who wished to graze their cattle on the same land. The defendant purchased the land, leading to termination of the plaintiff's lease. 763 P.2d at 546-47. In *Miller*, the defendant, a former employee of the plaintiff's tax preparation business, called the plaintiff's clients to solicit their business. 104 P.3d at 196. Each of these cases thus involved commercial competition – efforts by a commercial entity to win business away

from a competitor.

This case is different. Goldgroup did not lure MOR's business away from Plaintiffs or offer MOR a better deal on something it was buying from Plaintiffs. Goldgroup purchased MOR, and Plaintiffs allege that Goldgroup then induced MOR to cease performance under the Agreements. Goldgroup's competition-based cases are not helpful in this situation.

Although Goldgroup argues that Oroco was free to sell its surface and mining rights to Goldgroup, Plaintiffs have made several allegations that Oroco has breached the Agreements. Plaintiffs allege that Oroco withheld money and stock shares that were already owed to Plaintiffs and appear to allege that Goldgroup induced that conduct. Thus, Plaintiffs' claims are concerned with more than just the loss of future business under the Agreements, and the Court is not persuaded that such alleged conduct would fall "within the purview of the privilege of competition." *Ulan*, 558 P.2d at 746. The Court will not dismiss Plaintiffs claim on this basis.

Goldgroup also argues that "Plaintiffs offer absolutely no factual allegations as to Goldgroup's actions or how Goldgroup intentionally induced [Oroco and MOR], improperly or otherwise, to breach the contracts at issue." Doc. 36 at 5. The Court agrees. Plaintiffs have failed to plead facts showing that Goldgroup's alleged interference with Plaintiffs' business expectancy was both intentional and improper. *See Neonatology Assocs.*, 164 P.3d at 187. It is not sufficient to simply state that Goldgroup "had actual and constructive knowledge of Plaintiffs' valid business expectancy" and "improperly induced Defendants Oroco and MOR to prematurely cease performance under the Agreements[.]" Doc. 32, ¶¶ 104, 105. These conclusory allegations are not entitled to the presumption of truth and are not sufficient to defeat a 12(b)(6) motion. *See Iqbal*, 556 U.S. at 680.

Plaintiffs also argue that Goldgroup improperly interfered with the Agreements by "engaging in earthworks in violation of the suspended MIA in order to illegally conduct due diligence to acquire MOR." *Id.* But Plaintiffs do not allege in their complaint that

Goldgroup's actions in violation of the MIA interfered with any business expectancy. Rather, they allege that Goldgroup's actions were "unauthorized" and "in contravention" of the Agreements. Doc. 32, ¶ 54. This allegation does not support Plaintiffs' claim for intentional interference with a business expectancy. The Court will grant Goldgroup's motion to dismiss this claim.

### D. Leave to Amend.

Rule 15 makes clear that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy in favor of leave to amend must not only be heeded, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it must be applied with extreme liberality, *see Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 880 (9th Cir. 2001). This liberality "is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The Court will grant Plaintiffs' request for leave to amend.

**IT IS ORDERED** that Goldgroup's motion to dismiss (Doc. 36) is **granted in part** and **denied in part** as set forth above. Plaintiffs shall file an amended complaint no later than **June 27, 2014**.

Dated this 11th day of June, 2014.

David G. Campbell
United States District Judge

- 7 -